UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON JIMENEZ (A-246-060-652), | No.  1:26-cv-2924 DJC CSK |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| WARDEN OF THE CALIFORNIA CITY DETENTION CENTER, | |
| Respondent. | |

Petitioner Milton Jimenez (A-246-060-652), a citizen and native of El Salvador, filed a verified pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner has entered the United States without inspection at least twice, and in 2007 was previously detained inside the border, and voluntarily returned to Mexico that same day. On December 28, 2025, immigration officers re-detained petitioner, and he has been in continuous detention since that date. This habeas action concerns petitioner's re-detention. For the reasons that follow, the Court recommends granting the habeas petition, denying the motion for temporary restraining order, denying the motion to dismiss unnamed respondents, and ordering respondent to provide petitioner with a bond hearing.

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.     FACTUAL BACKGROUND[2]

Petitioner is a native and citizen of El Salvador.  (ECF No. 9 at 12 (Notice to Appear).)  Petitioner did not provide the date he first entered the United States without inspection.  (ECF No. 1.)  On February 3, 2007, near Tecate, California, U.S. Customs and Border Patrol ("CBP") officers encountered petitioner who admitted to having entered the United States near San Luis, Arizona, without inspection.  (ECF No. 9 at 31.)  That same day, CPB officers granted petitioner voluntary return to Mexico, and he returned to Mexico on February 3, 2007.  (Id.)  On some unknown date, petitioner returned to the United States.

Petitioner has been arrested by local authorities on multiple different occasions for different charges.  (ECF No. 9 at 17-27 (Rap Sheet); Id. at 31 (Form I-213).)  Respondent asserts the following criminal history for petitioner:[3]

(1) On December 5, 2008, petitioner was convicted of trespassing in violation of Los Angeles Municipal Code Section 41.24(a), and sentenced to one day in jail and twelve months' probation.  (ECF No. 9 (citing Ex. 4 (RAP Sheet) (id. at 17-27).)

(2) On October 13, 2009, petitioner was convicted of trespassing in violation of Los Angeles Municipal Code Section 41.24(a), and sentenced to two days in jail and twelve months' probation.  (Id.)

(3) On October 25, 2012, petitioner was convicted of trespassing: closed lands, in violation of California Penal Code Section 602(O), and was sentenced to three days in jail and to twenty-four months' probation.  (Id. at 4.)

(4) On November 1, 2017, petitioner was convicted of possession of a controlled substance in violation of California Health and Safety Code Section 11377(a), and

---

[2] Petitioner filed a verified habeas petition.  (ECF No. 1 at 9.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).  Respondent does not contest petitioner's factual allegations.  (See ECF No. 9.)

[3] Respondent describes criminal charges against petitioner that were subsequently dismissed or dropped.  (Id. at 3.)  Respondent does not assert detention authority on the basis of dismissed or dropped charges, and the Court therefore does not address these charges.

sentenced to three years' probation and fined.[4] (Id.)

On December 28, 2025, petitioner was arrested by U.S. Immigration and Customs Enforcement officers and detained. (Id. at 31.) Petitioner was issued a Notice to Appear in Immigration and Naturalization Act ("INA") Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings.[5] (Id. at 12.) In addition, the Notice to Appear does not allege petitioner is an "arriving alien," though the Notice does include a place to designate this information. (Id.) Petitioner has been in continuous detention since December 28, 2025, without a bond hearing.[6] (ECF No. 1 at 2, 6, 7; ECF No. 9 at 30.) Petitioner alleges that after his detention by ICE, he has suffered depression, cannot get timely medical care, and is unable to talk with his family due to lack of funds. (See ECF No. 1 at 7.)

## II.    PROCEDURAL BACKGROUND

On April 17, 2026, petitioner filed the petition for writ of habeas corpus, a motion for temporary restraining order, and a motion to appoint counsel. (ECF Nos. 1-3.) On April 17, 2026, the district court referred this matter to the magistrate judge. (ECF No. 6.) On April 27, 2026, respondent timely filed a return to the petition and an opposition to the motion for temporary restraining order. (ECF No. 9.) Petitioner did not file a reply. (See Docket.) On May 22, 2026, the Court noted respondent did not identify the controlled substance underlying the 2017 conviction serving as the basis for respondent's argument that petitioner was detained pursuant to § 1226(c) and ordered respondent to submit a supplemental brief within seven days. (ECF No. 11.) The Court also granted petitioner's motion for appointment of counsel, and granted petitioner an additional seven days after counsel is appointed to file a supplemental reply. (Id.) On June 3, 2026, the Court appointed counsel for petitioner. (ECF No. 12.) On June 11,

---

[4] On October 19, 2025, Santa Barbara Police Department officers arrested petitioner for "disorderly conduct: under the influence of drugs and false identification to a peace officer," and the disposition for these arrests is unknown. (ECF No. 9 at 4, 26-27.) Because the disposition is unknown, the Court does not consider these charges.

[5] Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

[6] Petitioner was detained on December 28, 2025, but the Notice to Appear was not issued until April 16, 2026. (ECF No. 9 at 12.)

2026, the Court granted petitioner's counsel's motion for extension of time to file a supplemental reply, noted respondent's failure to file a supplemental brief as ordered, ordered petitioner to file a reply within fourteen days, and stated that absent further order of the Court, briefing would close after petitioner filed a reply. (ECF No. 16.) On June 19, 2026, petitioner filed a timely traverse. (ECF No. 17.) Briefing is now complete.

III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

IV.    DISCUSSION

Petitioner challenges his mandatory and continued detention based on the violation of the following:[7] (1) the Fifth Amendment due process clause (claim one); and (2) the INA (claim two). (ECF No. 1 at 6-7.) Respondent contends that petitioner is detained pursuant to the mandatory detention provision of 8 U.S.C. § 1226(c)(1)(A) based on petitioner's 2017 conviction for possession of a controlled substance. (ECF No. 9 at 1, 4-5.) In the alternative, respondent argues that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing. (Id. at 2, 6-8.) Respondent cites Avila v.

---

[7] Petitioner includes a putative third claim he calls "the irreparable harm." (ECF No. 1 at 7.) Because this third claim is not a cognizable habeas claim, petitioner was proceeding pro se at the time he filed his petition, and pro se pleadings are liberally construed, the Court does not construe petitioner's third claim as a habeas claim and only considers petitioner's first two habeas claims. The Court also notes that respondent did not address putative claim three. (See ECF No. 9.)

Bondi, No. 25-3741, 2026 WL 819258 (8th Cir. Mar. 25, 2026) and Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of the position that § 1225(b)(2)(A) is applicable here. (Id. at 6.) Respondent also argues that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (Id. at 7.) Further, respondent asks the Court to strike and dismiss the noncustodial respondents from this action. (Id. at 1 n.1.)

**A.      Application of § 1226(c)(1)(A)  (Claim Two)**

Section 1226(c)(1)(A) mandates detention of any noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). 8 U.S.C. § 1182(a)(2)(A)(i)(II) makes a noncitizen inadmissible if he has committed a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in 21 U.S.C. § 802).[8] In 2017, petitioner was convicted of a violation of California Health and Safety Code § 11377(a), which provides, in pertinent part:

> every person who possesses any controlled substance which is (1) classified in Schedule III, IV, or V, and which is not a narcotic drug, (2) specified in subdivision (d) of Section 11054, except paragraphs (13), (14), (15), and (20) of subdivision (d), (3) specified in paragraph (11) of subdivision (c) of Section 11056, (4) specified in paragraph (2) or (3) of subdivision (f) of Section 11054, or (5) specified in subdivision (d), (e), or (f) of Section 11055, unless upon the prescription of a physician, dentist, podiatrist, or veterinarian, licensed to practice in this state, shall be punished by imprisonment in a county jail for a period of not more than one year.

Cal. Health & Safety Code § 11377(a). Section § 11377 is broader than the generic federal definition. See Ruiz-Vidal v. Gonzales, 473 F.3d 1072, 1077-78 & n.6 (9th Cir. 2007) ("[I]n order to prove removability, the government must show that [a noncitizen's] criminal conviction was for possession of a substance that is not only listed under California law, but also contained in the federal schedules of the CSA."), abrogated on other grounds by Kwong v. Holder, 671 F.3d 872 (9th Cir. 2011); Delgado-Reyes v. Bondi, 2025 WL 1088191, at *1 (9th Cir. Apr. 11, 2025)

---

[8] The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. 21 U.S.C. § 802(6).

5

(same).

In the immigration context, a noncitizen "is generally removable if he or she has been convicted of a violation of a federal, state, or foreign law 'relating to a controlled substance,' as that term is defined in § [8]02 of the Controlled Substances Act ("CSA"), 21 U.S.C. § 802." Lazo v. Wilkinson, 989 F.3d 705, 709 (9th Cir. 2021) (citing 8 U.S.C. § 1227(a)(2)(B)(i)).  Under the CSA, the term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter, 21 U.S.C. § 802(6).  Id. (citations omitted); see also 21 U.S.C. § 812(b)(1)-(5), (c).  "In assessing whether a conviction for a particular state offense counts as one 'relating to a controlled substance' under § 237(a)(2)(B)(i), . . . [courts] apply[ ] the so-called 'categorical approach,' under which a 'state conviction triggers removal only if, by definition, the underlying crime falls within a category of removable offenses defined by federal law.'"  Lazo, 989 F.3d at 710 (citing Mellouli v. Lynch, 575 U.S. 798, 805 (2015)).  Where the elements that make up the state crime relate to a federally controlled substance as defined in the CSA, then the removal provision is satisfied.  Id. (citing Mellouli, 575 U.S. at 811); see also Mellouli, 575 U.S. at 808 (finding that the Kansas statute was not a categorical match for purposes of deportability under 8 U.S.C. § 1227(a)(2)(B)(i) because the Kansas drug paraphernalia statute at issue relied on a list of drugs that "included at least nine substances" that were not included within the CSA's definition).

Under this framework, the Ninth Circuit found that both California Health & Safety Code §§ 11350(a) and 11377(a) include substances that are not regulated by the CSA, and therefore §§ 11350 and 11377 are not categorically offenses "relating to a controlled substance" under immigration statutes 8 U.S.C. §§ 1227(a)(2)(B)(i) and 1182(a)(2)(A)(i)(II).  See Lazo, 989 F.3d at 710 (explaining § 11350(a) relies on an overbroad list of controlled substances not similarly regulated by the CSA); see also Coronado v. Holder, 759 F.3d 977, 982-83 (9th Cir. 2014) (explaining that because § 11377(a) includes the khat (Catha Edulis), a substance which does not violate the CSA, the full range of conduct covered by § 11377(a) does not fall within CSA schedules and thus petitioner's conviction was not a categorically removable offense).

But under the "modified categorical approach," the Ninth Circuit also determined that

6

California Health & Safety Code §§ 11350(a) and 11377(a) are "divisible," which means that each statute defines multiple offenses with different elements, allowing courts to determine whether the offense at issue relates to a controlled substance under the CSA. See Lazo, 989 F.3d at 710-11, 712-13 ("the official California pattern jury instruction applicable to offenses under § 11350 also requires that the specific controlled substance be identified in the instructions and that, in order to convict, the jury must unanimously find that the defendant possessed that particular substance"); Coronado, 759 F.3d at 984-85 (explaining that § 11377(a) is divisible because it identifies a number of controlled substances by referencing various California drug schedules and statutes and criminalizes the possession of any one of those substances, effectively creating several different crimes). The Ninth Circuit used this approach in Lazo and found that the charging document and transcript of guilty-plea established that the noncitizen was convicted for possession of cocaine under § 11350(a) which falls under Schedule II of the CSA. Lazo, 989 F.3d at 714. In Coronado, the court found that the criminal complaints, docket sheet, and minute order established that petitioner twice pleaded guilty to possession of methamphetamine under § 11377(a), which is prohibited by the CSA. Coronado, 759 F.3d at 985-86.

Here, respondent does not identify the specific controlled substance which formed the basis for petitioner's 2017 conviction for possession of a controlled substance. (ECF No. 9.) As a result, on May 22, 2026, the Court expressly noted that respondent failed to identify the controlled substance and ordered respondent to file a supplemental brief to provide this information, but respondent failed to respond. (See ECF No. 11; Docket.) Thus, this Court finds, solely for the purpose of addressing the petition for writ of habeas corpus, that respondent did not substantiate his argument that petitioner's detention is mandatory under § 1226(c). See Ruiz-Vidal, 473 F.3d at 1077-78. Under Ruiz-Vidal, because § 11377(a) is categorically overbroad, the government cannot establish mandatory detention under § 1226(c) without first proving — through the modified categorical approach — that the specific conviction involved a federally controlled substance. See id.

Respondent's reliance on Young v. Holder, 697 F.3d 976 (9th Cir. 2012) (en banc), is unavailing because the court in Young addressed a case in a different procedural posture than the

one addressed here.  In <u>Young</u>, the petitioner was seeking affirmative relief from the decision of the Board of Immigration Appeals that the noncitizen was ineligible for cancellation of removal because he had been convicted of an aggravated felony.  <u>Id.</u> at 979.  Here, petitioner has not been ordered removed; indeed, petitioner was placed into removal proceedings on April 16, 2026, and removal proceedings are pending.  (ECF No. 9 at 12; ECF No. 17 at 6.)  There has been no finding by the immigration court that petitioner has sustained a conviction that requires mandatory detention under 8 U.S.C. § 1226(c).  Thus, <u>Young</u> is inapposite.

Because the Court is unable to determine whether petitioner's 2017 conviction "relate[s] to a controlled substance" under the CSA, <u>see</u> 8 U.S.C. § 1182(a)(2)(A)(i)(II), this Court cannot find that petitioner is subject to mandatory detention under § 1226(c) as respondent argues.  The Court now turns to respondent's alternative argument.

**B.    Application of § 1225(b) (Claim Two)**

This Court must now decide whether petitioner, who was detained while living in the United States, is subject to discretionary release under § 1226(a) as petitioner contends, or whether petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondent alternatively argues.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  <u>Rodriguez Diaz</u>, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  <u>Id.</u> at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing."  <u>Labrador-Prato v. Noem</u>, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing <u>Jennings v. Rodriguez</u>, 583 U.S. 281,

306 (2018)). Respondent argues that petitioner's prior release at the discretion of the DHS does not convert petitioner's presence in the United States as an "admission," and contend § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention. (ECF No. 9 at 7.)

The Court concludes that § 1226(a) applies to petitioner. First, petitioner was not encountered at the border, but was living in the United States when he was detained. (ECF No. 9 at 30-31.) Respondent does not dispute these facts. (See ECF No. 9.)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[9] of Sections 1225 and 1226. See, e.g., Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026) ("Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text."); Lopez-Campos v. Raycraft, et al., 175 F.4th 713, 735 (6th Cir. 2026)[10]; Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026); Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025); Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases

---

[9] Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196.

[10] The full case citation also includes the following: Juan Manuel Lopez-Campos (25-1965); Juan Carlos Sanchez Alvarez (25-1969); Jose Daniel Contreras-Cervantes; Fredy De Los Angeles-Flores; Mariela Virginia Ocando-Leon; Luis Felipe Jarquin-Jarquin; Debbie Vasquezcruz; Jairo Manuel Godoy-Perez; Marifer Diaz-Alcantar; Miguel Angel Reyes-Sanchez (25-1978); Jesus Jose Pizarro Reyes (25-1982) v. Kevin Raycraft, Immigr. & Customs Enf't, Acting Dir. of Detroit Field Off., Enf't & Removal Operations (25-1965/1969/1978/1982); Markwayne Mullin, Sec'y of U.S. Dep't of Homeland Security; U.S. Dep't of Homeland Sec. (25-1965/1969); Todd W. Blanche, Acting U.S. Att'y General; Exec. Off. of Immigr. Rev. (25-1965), 2026 WL 1283891, at *1 (6th Cir. May 11, 2026).

rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondent's reliance on Buenrostro-Mendez, 166 F.4th 494 and Avila, 2026 WL 819258, is unavailing. This Court does not find Buenrostro-Mendez or Avila to be persuasive, and instead finds the analysis in Castañon-Nava, 161 F.4th at 1060-62, and Barbosa da Cunha, 175 F.4th 61, to be more persuasive. See also Lopez-Campos, 2026 WL 1283891, at *1; Hernandez Alvarez, 2026 WL 1243395; Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D.

Cal. Feb. 14, 2026); Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava, 161 F.4th at 1052); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same).  As the Second Circuit explained in Barbosa da Cunha:

> Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text. That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.
>
> This result is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose. It likewise comports with the Supreme Court's established understanding of Sections 1225 and 1226. It reflects Executive Branch practice over thirty years and across five Presidential administrations. Moreover, it explains why Congress has never challenged that settled practice despite making numerous amendments to the immigration laws.

Barbosa da Cunha, 175 F.4th at 69.  In any event, neither Buenrostro-Mendez nor Avila are binding on this Court.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner has resided in this country for decades and petitioner's December 2025 arrest and detention were not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 C.F.R.

§ 236.1(d)(1)).  If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release.  Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  As such, petitioner should have been provided a bond hearing before his re-detention and is entitled to relief on his statutory claim (claim two).

### C.    Petitioner's Other Claim for Relief (Claim One)

Because the Court recommends granting the petition on the statutory claim (claim two), the Court need not address petitioner's first claim raised in the petition.  See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").  Petitioner is entitled to the habeas relief he seeks based on the court's ruling as to claim two.

### D.    Summary

In summary, the Court recommends that the petition for writ of habeas corpus be granted on petitioner's statutory claim (claim two).

## V.    REMEDY

As relief in both his habeas petition and his motion for temporary restraining order, petitioner requests immediate release from custody or, in the alternative, a bond hearing.  (ECF No. 1 at 8; ECF No. 2 at 8.)  Considering § 1226(a)'s discretionary detention framework, and the absence of any prior release on bond pursuant to § 1226(a) (see ECF No. 9 at 29-32), this Court finds that an order directing respondent to provide a bond hearing, rather than immediate release, is the appropriate remedy.  See 8 U.S.C. § 1226(a)(1) (authorizing the Attorney General to arrest and detain noncitizens pending removal proceedings); Rodriguez Vazquez v. Bostock, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. Apr. 24, 2025) (explaining "the specific harm [petitioner]

alleges—that he is unlawfully barred from receiving a bond hearing on the merits—is remedied by granting his request for a bond hearing under Section 1226(a)[.]”); see also J.S. v. Wofford, 2026 WL 125258, at *8 (E.D. Cal. Jan. 16, 2026) (recommending bond hearing where no prior release on bond pursuant to § 1226(a)), findings and recommendations adopted by, 2026 WL 297304 (E.D. Cal. Feb. 4, 2026); Cresencio Sandoval Alvarez v. Warden, 2026 WL 913250, at *3 (E.D. Cal. Apr. 3, 2026) (same).  The Court further concludes that the appropriate burden of proof at this initial bond hearing is on petitioner where there was no prior release and in the absence of a prolonged detention finding.[11]  See J.S. v. Wofford, 2026 WL 125258, at *8; 8 C.F.R. §§ 236.1(d)(1), 1003.19; Rodriguez Diaz, 53 F.4th at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19)).  At this hearing, “[p]etitioner bears the burden of establishing that he is not a risk of flight or danger to the community.”  J.S. v. Wofford, 2026 WL 297304, at *2 (where petitioner not previously released by immigration authorities or subject to prolonged detention, granting bond hearing where petitioner bears burden of proof).

## VI.   MOTION FOR TEMPORARY RESTRAINING ORDER

As noted above, petitioner filed a motion for temporary restraining order.[12]  (ECF No. 2.) In light of the recommendation that the petition be granted, this Court recommends that the motion for temporary restraining order be denied as unnecessary.

///

///

_____

[11]  At the time petitioner filed the instant petition, he had been detained just over 3.5 months. This Court is not addressing the length of petitioner’s detention and whether such detention is prolonged where petitioner does not challenge the length of his detention in the instant petition. Therefore, if petitioner remains detained, petitioner is not barred from filing a separate habeas petition challenging his detention as prolonged where such a claim was not raised in the instant petition or ripe at the time the instant petition was filed.

[12]  The Court observes that petitioner used a typewritten form with varying fonts in his motion for temporary restraining order.  (ECF No. 2 at 1-8.)  On the second page, petitioner states that he was “detained on orders of DHS since 12/30/2025 having been apprehended at the border.”  (Id. at 2.)  However, other records confirm that petitioner was not apprehended at the border when detained on December 28, 2025, but rather was arrested and detained in Santa Maria, California. (ECF No. 9 at 31.)  Further, immigration records reflect that although petitioner was initially detained at the border in 2007, he was voluntarily released to Mexico that same day, and at some subsequent date re-entered the United States without inspection.  (Id. at 29, 31.)

13

## VII.    RESPONDENT'S MOTION TO STRIKE OR DISMISS

Petitioner correctly named as the sole respondent Warden of the California City Correctional Center, the warden of the facility where petitioner is being held.  See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).  In respondent's return to the petition, respondent included a request to strike or dismiss all respondents but for petitioner's immediate custodian.  (ECF No. 9 at 1 n.1.)  Accordingly, respondent's motion to strike or dismiss should be denied as unnecessary.

## VIII.    CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.    Respondent's motion to strike or dismiss (ECF No. 9 at 1 n.1) be DENIED.

2.    Petitioner's motion for temporary restraining order (ECF No. 2) be DENIED.

3.    The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

4.    Respondent be ordered to provide petitioner Milton Jimenez (A-246-060-652), with a bond hearing within **seven days** of the adoption of these findings and recommendations where petitioner has the burden to demonstrate that he is not a flight risk or danger to the community.  Petitioner shall be allowed to have his counsel present at the bond hearing.  If petitioner is granted release on bond, respondent shall return all of petitioner's documents and possessions to petitioner at the time of release.

5.    If respondent fails to provide petitioner a bond hearing within **seven days**, petitioner shall be immediately released from respondent's custody.  Respondent shall return all of petitioner's documents and possessions to petitioner at the time of release.

6.    The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that

failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 1, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/jime2924.157.tro.2241.imm.bond

15